Filed 4/2/13  In re M.M.CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re M.M., a Person Coming Under the Juvenile Court Law. | B241835 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.V.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK90032) |

APPEAL from an order of the Superior Court of Los Angeles County, Sherri Sobel, Juvenile Court Referee.  Affirmed.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Emery El Habiby, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

S.V. (mother) appeals a dispositional order removing three-year-old M.M. from her care. Mother contends the order must be reversed because there was no evidence the child was at risk of harm in mother's care and there were less restrictive alternatives to removal. (Welf. & Inst. Code, § 361.5.)[1] We reject mother's arguments and affirm the order under review.

## FACTS AND PROCEDURAL BACKGROUND

1. *Referral; petition filed; M.M. ordered detained.*

On February 10, 2012, the Department of Children and Family Services (the Department) received an immediate referral from the Child Protection Hotline alleging that on February 3, 2012, at 3:00 a.m., mother had been a victim of domestic violence. According to the Los Angeles County Sherriff's incident report, mother told Sheriff's Deputy Ryan that father accused her of cheating, pushed her off the bed and punched her in the head and face numerous times with both fists. While mother telephoned 911, father produced a butcher knife and held it "right next to her chest in a threatening manner." Mother feared father was going to stab her. Father ran from the house and drove away. Deputy Ryan noted mother had swelling to her nose and blood in her right nostril. Mother told the deputy she and father had been together for seven years and "there has been a lengthy history of domestic violence, however none that has been reported."

The report indicated Deputy Ryan booked into evidence mother's written statement concerning the incident and the knife father used in the incident. A Commissioner approved a temporary restraining order against father and mother was provided information regarding how to obtain a permanent restraining order.

The referring party stated a child was in the home during the incident but did not sustain any injuries. Also, the referring party had placed welfare calls to mother on

---

[1]     Subsequent unspecified statutory references are to the Welfare and Institutions Code.

2

February 9 and 10, 2012, but there had been no response. It was unknown whether father was in the home or if the mother had obtained a permanent restraining order.

A social worker went to the home twice but found no indication anyone was present. On February 13, 2012, the social worker left a business card attached to a clamp on the front door. On February 15, 2012, the social worker found a stroller in front of the apartment and the business card left on February 13, 2012, was not there. The social worker again left a business card on the front door.

On February 16, 2012, Sheriff's Detective Izzo advised the social worker that mother stated on February 15, 2012, she was not in a hurry to obtain a permanent restraining order because if she did, she would be "homeless."

The whereabouts of the parents remained unknown. Written notice of a detention hearing on February 21, 2012, was sent to their last known address on February 16, 2012. The Department filed a dependency petition which alleged the history of domestic violence between mother and father placed M.M. at risk of harm.

Neither parent appeared at the detention hearing. The juvenile court found a substantial danger to M.M.'s physical or emotional health, ordered her detained in shelter care when she was located and issued a protective custody warrant. Mother and father were granted separate monitored visitation after they contacted the Department.

2. *Jurisdiction/Disposition.*

The jurisdiction report indicated the family's whereabouts remained unknown until March 9, 2012, when father contacted the Department. Mother and father met with a social worker that day and brought M.M. to the meeting. Father reported he had been living in the family home but did not know the Department was trying to contact them until March 8, 2012, when the social worker left a business card. Mother stated she had been at maternal grandmother's home in Rosamond with M.M. and she had been protecting the child. Regarding the incident of domestic violence, mother stated father hit her, she called the police and father threatened her with a knife. However, M.M. was asleep in her room at the time. The social worker explained the juvenile court had ordered M.M. detained. Mother was tearful but M.M. did not cry or appear to be in

3

distress. Later, M.M. told the social worker mother and father had been in a physical altercation in which father hit mother, causing mother to be "sad and crying."

When interviewed for the jurisdiction report, mother denied father held a knife to her chest. Mother explained father works as a chef and, as father gathered his knives to leave, he moved toward her with a knife while she was on the telephone with the police but did not hold it to her chest. Although mother did not want to press charges against father, sheriff's deputies helped mother obtain a temporary protective order that required father to move out and stay away.

The report noted each parent had an extensive child welfare history and each had been exposed to parental substance abuse and domestic violence as children. Mother was the subject of referrals commencing in 1995 and she was a dependent child from 2005 until 2009 when jurisdiction terminated. M.M. was born while mother was a dependent. Mother indicated growing up in foster care was difficult. Mother and father met when they were 16 and 17 years of age, respectively, and they have been together ever since. Mother reported no other significant relationships.

Father told the social worker he slapped mother at least twice and realized he had "crossed a line" when mother began screaming. While mother was on the telephone with the police, father gathered his work things, including his cutlery, and left. When he returned a few days later, mother and M.M. were gone and mother would not return his calls. If M.M. could not be returned home, father wanted her to stay with mother, stating she was a great mom. Father also agreed to move from the residence temporarily if that were deemed necessary.

A domestic violence advocate told the social worker there had been a similar incident of domestic violence in 2011 and mother was not receptive to domestic violence services offered to her at that time.

The report noted mother and father appear to be bonded to M.M. and the child has lived with both parents for a significant amount of time. Also, mother and father had an extended family network, admitted the incident of domestic violence and were willing to

4

cooperate with the Department. At separate visits with each parent on March 14, 2012, M.M. asked to come home.

On March 26, 2012, the juvenile court continued the case for appointment of counsel for M.M.

On April 5, 2012, M.M. was placed in the care of paternal aunt.

A Last Minute Information form filed April 23, 2012, indicated father no longer resided in the home and now lived with his brother in East Palmdale. Mother and father reported they were enrolled in parenting class and domestic violence programs. However, the Department had not confirmed their enrollment. The Department requested discretion to release M.M. to mother after verification of mother's enrollment and a team decision making meeting regarding reunification.

A Last Minute Information form filed April 25, 2012, indicated mother had attended one 2-hour domestic violence class on April 17, 2012. A social worker recently had verified that father had moved from the residence. The Department requested discretion to release M.M. to mother pending mother's participation in programs and conjoint counseling to insure the child's safety in mother's care.

3. *Adjudication.*

At the adjudication, mother testified father had moved from the home, she had not allowed him back and she would keep him away if M.M. were returned to her. Mother presented a letter from A Change of Faces dated April 23, 2012, indicating mother had completed 4 of 12 parenting classes and 4 of 26 domestic violence classes.

Father acknowledged the domestic violence incident on February 3, 2012, but denied threatening mother with a knife. Father testified he moved from the home "when my attorney suggested it on the last two court dates."

Dependency investigator Shannon O'Brien testified the Department opposed release of M.M. to mother because mother and father intended to maintain a relationship. The Department wanted mother and father to participate in conjoint counseling to address domestic violence issues before the child was placed with either parent. O'Brien noted father's relocation from the home was a recent development. O'Brien indicated mother's

5

participation in 4 of 12 parenting classes and 4 of 26 domestic violence classes did not change O'Brien's opinion mother currently was unable to protect the child.

In argument, M.M.'s counsel expressed concern that mother had only recently begun parenting and domestic violence classes and it was premature to release M.M. to mother. Mother's counsel argued the fact the parents intended to reunify should be viewed as a strength as the purpose of the proceedings was family reunification.

The juvenile court sustained the petition and found M.M. was a dependent child within the meaning of section 300, subdivision (b).[2] The juvenile court refused to strike father's use of a knife from the allegation, noting mother told the deputy sheriff who responded to her 911 call that father held a butcher's knife to her chest in a threatening manner. The juvenile court noted both parents had experienced domestic violence as children and they "are repeating that pattern with their own child." Further, mother only recently had begun to participate in family reunification services and was far from resolving her domestic violence issues with father, i.e., "throwing the father out, getting a restraining order, [and] swearing he's never coming back." "What I have is a young couple who will reunite just as soon as they can. . . . I don't believe . . . mother is going to sneak [father] in at 3:00 in the morning. . . . [¶] Nonetheless, there is no way, given the history of this case, that this child can be returned to either parent at this time."

The juvenile court found, by clear and convincing evidence, a substantial danger existed to the physical health of M.M. and there were no reasonable means to protect the child without removal from her parents' custody. The juvenile court ordered the Department to provide family reunification services and granted mother and father separate monitored visits three times per week. The juvenile court ordered mother and

---

[2] The sustained petition alleged mother and father have a history of engaging in violent altercations in the presence of the child. On February 3, 2012, father pushed mother, repeatedly struck her face and head with his fists, and held a knife to mother's chest. Father has struck mother on prior occasions and mother has failed to protect the child in that mother has failed to obtain a restraining order against father, thereby placing the child at risk of harm.

6

father to participate in counseling programs and ordered mother to participate in a domestic violence support group and parenting class.

## CONTENTIONS

Mother contends the order removing M.M. from her care must be reversed because there was no evidence the child was at risk of harm in mother's care and there were less restrictive alternatives to removal, such as return to mother with family maintenance services and unannounced visits by the social worker to insure M.M.'s safety.[3]

## DISCUSSION

1.  *Applicable law.*

The standard for removal of a child from parental custody is found in section 361, subdivision (c) which provides, in relevant part, "A dependent child may not be taken from the physical custody of [a parent] with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence . . . [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." (§ 361.5, subd. (c).)

---

[3]    Mother also complains the jurisdictional and dispositional hearings were conducted in 15 minutes and the juvenile court "unnecessarily hurried through this combined hearing," thereby preventing the juvenile court from "gaining a clear understanding of" the risk to M.M. The record indicates that, at the outset of the hearing, the juvenile court noted the parties had scheduled the matter for a contested hearing but had allotted only one unit of court time, 15 minutes, to the matter. However, it is apparent the combined hearing took longer than 15 minutes. Further, mother failed to object to the time allotted to the case or the manner in which the juvenile court conducted the hearing. She cannot raise the issue for the first time on appeal. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293; *People v. Saunders* (1993) 5 Cal.4th 580, 589-590.) In any event, the record reflects the juvenile court's reasoned consideration of the matters at issue.

7

"The parent need not be dangerous and the child need not have been actually harmed for removal to be appropriate. The focus of the statute is on averting harm to the child. [Citations.] In this regard, the court may consider the parent's past conduct as well as present circumstances. [Citation.]" (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.) Although the juvenile court's findings must be based on clear and convincing evidence, we review an order removing a child from parental custody for substantial evidence. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433; *In re Henry V.* (2004) 119 Cal.App.4th 522, 529.)

    2. *The record supports the juvenile court's removal order.*

Mother contends the juvenile court's belief mother would reunite with father as soon as possible and that mother was repeating a pattern of domestic violence constituted speculation and was not relevant to the question whether M.M. was at risk of harm in mother's care. Mother claims she separated from father after the incident of February 3, 2012, by moving to her mother's house with M.M. Also, one of the means of protecting M.M., removal of father from the home, had already occurred. (§ 361, subd. (c).) Mother asserts there was no evidence mother and father planned to reunite in violation of a court order, M.M. did not witness the incident of February 3, 2012, she was healthy and well-cared for when she was detained, she expressed a desire to return home during visits and there had been no further incidents of domestic violence.

Mother also claims less drastic alternatives to removal were available, including return of M.M. to mother "under stringent conditions of supervision by the agency such as unannounced visits." (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 148; *In re Henry V.*, *supra*, 119 Cal.App.4th at p. 529.) Mother concludes she has taken all available precautionary steps to ensure M.M.'s safety and the juvenile court's refusal to return the child under supervision was an abuse of discretion.

We find the juvenile court reasonably could conclude, by clear and convincing evidence, mother was not yet ready to protect M.M. from future domestic violence with father. As the juvenile court noted, mother and father both had been exposed to domestic violence as children, they were engaged in a relationship marked by father's domestic violence toward mother, and mother had only recently begun domestic violence classes. Additionally, mother and father failed to contact the Department at the outset of the case and mother was hesitant to obtain a permanent restraining order against father for fear of being homeless. Given that mother and father appeared to be repeating the pattern of domestic violence to which they had been exposed as children, the juvenile court reasonably could conclude mother's attendance at 4 sessions of a 26-week domestic violence program did not equip mother to protect M.M. from domestic violence.

Regarding the juvenile court's belief mother would reunite with father as soon as possible, which mother denigrates as speculation, the record indicates mother and father had been together since they were 16 and 17 years of age and mother had not had any other significant relationships. Further, father told the social worker he was willing to move *temporarily* from the home if that were necessary and, at the disposition hearing, mother's counsel conceded mother and father intended to reunite, noting that was the purpose of the proceedings. Thus, it was not speculation for the juvenile court to factor mother's intent to reunify with father into its determination.

Mother argues various cases support a different result. However, each case cited is factually distinguishable from mother's situation. *In re W.O.* (1979) 88 Cal.App.3d 906, reversed an order removing children from parental custody. It held the juvenile court's fear the children might be endangered by cocaine and marijuana discovered at the residence beyond the reach of the children, referred to as a remote possibility by the juvenile court, was insufficient to support an order of removal from parental custody. Mother claims the juvenile court similarly relied on remote possibilities and speculation in this case. However, given mother and father's history of domestic violence, the juvenile court's fear that domestic violence would occur in M.M.'s presence was not speculation but a reasoned assessment of the risk the child faced in mother's custody.

9

*In re Henry V., supra,* 119 Cal.App.4th 522, reversed the removal of a child based on burn marks of undetermined origin and the mother's bonding deficiencies. *Henry V.* reasoned the physical abuse was a single occurrence and removal had been premised on the need to complete a bonding study but there was no evidence the study could not occur with the child living at home. Here, there was a long history of domestic violence, rather than a single incident of child abuse, and no showing the risk of domestic violence had abated.

*In re Jasmine G.* (2000) 82 Cal.App.4th 282, reversed an order removing a child from parental care because of corporal punishment inflicted by both parents. *Jasmine G.* held a social worker's testimony the parents lacked an understanding of their responsibility for the injuries, had a rigid philosophy about child rearing and had not completely disavowed corporal punishment was insufficient to support a finding that return of the child would be unsafe. *Jasmine G.* noted both parents had expressed remorse, had attended parenting classes and the child testified she had no fear of either parent. Here, the juvenile court confronted a case history that included two generations of domestic violence. Mother had only recently begun domestic violence classes and had not yet advanced sufficiently in her understanding of domestic violence to able to protect M.M.

With respect to less drastic alternatives, the juvenile court reasonably could conclude unannounced visits and family maintenance services were not adequate to protect M.M. from exposure to domestic violence. As such, there were no reasonable means to protect M.M. without removing her from mother's custody.

In sum, the evidence supports the juvenile court's finding of a substantial danger to M.M.'s physical health and the absence of reasonable means to protect her without removal from mother's custody.

**DISPOSITION**

The order of the juvenile court is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:



CROSKEY, J.



ALDRICH, J.


11