[No. D062087. Fourth Dist., Div. One. Nov. 26, 2012.]

In re HAILEY T. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
CHRISTOPHER T. et al., Defendants and Appellants.

## COUNSEL

Christy C. Peterson, under appointment by the Court of Appeal, for Defendant and Appellant Christopher T.

Sahyeh S. Riopelle, under appointment by the Court of Appeal, for Defendant and Appellant Samantha T.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Lorraine Elliott, under appointment by the Court of Appeal, for Minors.

## OPINION

**NARES, Acting P. J.**—Christopher T. and Samantha T. are the parents of Hailey T. and Nathan T., who were adjudicated as dependents of the juvenile court under Welfare and Institutions Code section 300, subdivisions (a) and (j).[1] The parents appeal the dispositional order under section 361, subdivision (c)(1), removing the older child from their custody, contending the evidence was insufficient to support the removal order, and there were reasonable alternatives short of removal to protect the child.[2]

---

[1] Statutory references are to the Welfare and Institutions Code.

[2] Neither parent presents any arguments challenging the dispositional order and removal of the younger child from the family home.

## FACTS

On February 14, 2012, the maternal grandmother watched Hailey, then three years old, and Nathan, then four months old, while both parents were at work. Christopher returned home from work at around 4:30 p.m. and relieved the maternal grandmother. Christopher put Nathan down for a nap and cared for Hailey until Samantha arrived home at 6:30 p.m. after work and grocery shopping. Christopher went outside to work on his car. As Samantha was putting away groceries, she heard Nathan crying and noticed his right eye was red, but did not think anything was "out of the ordinary." Samantha put Nathan in an electric swing in the playroom, and left him and Hailey watching television while she cooked dinner. Samantha could not see the children from the kitchen.

When Samantha checked on the children about 30 minutes later, she noticed the onset of a bruise on Nathan's right eye. Christopher noticed some redness on Nathan's left eyelid. Christopher, who is CPR certified, used a flashlight to check if Nathan was tracking, and the infant's reactions seemed normal. Nathan was not upset or crying and, because of the late hour, the parents decided to wait until the next day to take him to a doctor.

On February 15, the parents took Nathan to North County Health Services, where a doctor ran blood tests and scheduled a followup appointment for the next morning to review the results. When the parents returned on February 16, they were told to take Nathan to Rady Children's Hospital's emergency room in San Diego for additional testing. Emergency room doctors diagnosed Nathan with subconjunctival hemorrhage to the right eye and concluded his injuries were nonaccidental. A hospital hold was placed on Nathan, and when he was released from the hospital, he was taken to Polinsky Children's Center (PCC). Hailey also was detained at PCC.

Jennifer Davis, M.D., a child abuse specialist, examined Nathan on February 17 at PCC and reported there was bruising to Nathan's right eye, on the eyeball, on the eyelid and underneath the eye. Nathan also had a bruise to his cheekbone under his right eye and petechiae around his left eye. Dr. Davis said these types of injuries are typically seen in strangulation cases, but because of the bruise on Nathan's cheek, she believed he most likely was struck.

Neither parent was able to explain Nathan's injuries other than suggesting Hailey could have accidently hurt the infant when she was combing his hair or playing with his toys. The maternal grandmother remembered Hailey saying she was going to brush Nathan's hair, and remarked: "I have to remind her to be gentle but she's curious about him." An Escondido police

officer investigated the case on the day the children were removed and, in his police report, tentatively concluded that Hailey had accidentally caused Nathan's injuries. The officer wrote: "Based on this evidence[,] I believe Hailey had either tried to comb Nathan's hair or hand him one of his cars. Hailey probably did not compensate for the swinging motion of Nathan's swing. As she tried one of these actions[,] she most likely pushed one of these objects and accidentally struck Nathan on his right eye."

The social worker reported that Christopher and Samantha, who had been married for nearly nine years, had no child welfare history, and there were no prior reports of physical abuse. Christopher was in the Navy and Samantha worked part time at a bookstore. According to the maternal grandmother, who lived a block away, Christopher and Samantha had a good relationship and did not "bicker"; the grandmother had never witnessed domestic violence between them. The grandmother also said Christopher had a good relationship with the children and would play with them after work even when he was tired. Christopher said he disciplined Hailey with timeouts.

Both parents denied having substance abuse and domestic violence problems. The social worker also interviewed Hailey, who said "no one fights" and "no adults yell" in the family home. Hailey also denied any physical or sexual abuse. Hailey said her baby brother was at the doctor because "he [had] a bruise," and she pointed to the area below her eye. Hailey said she did not know how Nathan's eye was hurt. The social worker noted Hailey was able to speak in full sentences and appeared developmentally on track.

Both children were up to date on immunizations and developmentally on target. At a meeting conducted by the San Diego County Health and Human Services Agency (Agency) to discuss the case, the parents were characterized as "good parents."

On February 21, Agency filed dependency petitions on behalf of Hailey and Nathan. Nathan's petition alleged he had suffered serious physical harm as a result of the failure of his parents to adequately protect or supervise him. (§ 300, subd. (b).) Hailey's petition alleged she was at substantial risk of suffering harm based on the injuries sustained by her sibling. (§ 300, subd. (j).)

The children were detained in out-of-home care.

On March 2, Agency placed Hailey and Nathan with the maternal grandfather with support of the maternal great-grandparents. The maternal grandmother agreed to move out of the residence pending further approval.[3]

Both parents started family services, including weekly parenting classes, a 52-week child abuse class and individual counseling. They also visited the children daily and helped with their basic care.

Christopher provided the social worker with a bag of toys and a baby brush that the parents believed Hailey may have used when Nathan was injured. Dr. Davis reviewed photographs of the toys and opined that it was very unlikely Nathan's injuries were the result of being hit with a toy or brush. She reiterated her belief that Nathan most likely had been struck and was the victim of child abuse. Davis did not believe a normal three-year-old child was capable of inflicting Nathan's injuries. Davis opined that Nathan was likely "struck more than one time or was struck and strangled."

On May 16, Agency filed amended dependency petitions on behalf of Hailey and Nathan. Nathan's amended petition contained an allegation under section 300, subdivision (a), that the parents caused Nathan's injuries by striking and/or strangling him. Hailey's amended petition contained an allegation that she was at substantial risk of suffering a nonaccidental injury inflicted by a parent.

At the contested jurisdiction hearing, the social worker testified that Nathan's injuries were not consistent with the parents' explanation that Hailey may have caused them. Dr. Davis testified Nathan's injuries were nonaccidental and he appeared to have been struck more than once. She could not determine whether he sustained the injuries during a single or multiple episodes. Dr. Davis also testified that it was highly unlikely that Hailey inflicted Nathan's injuries.

Thomas Grogan, M.D., who testified on behalf of Samantha, said there was no evidence of strangulation in the medical reports he reviewed. Dr. Grogan said the bruise on Nathan's cheekbone was likely caused by a direct blow, and he opined it could have been caused by Hailey. Dr. Grogan also said it was impossible to conclude Nathan's eye injuries were caused intentionally. Dr. Grogan opined the injuries could have occurred "purely accidentally."

The juvenile court sustained the dependency petitions after striking the language that Nathan was strangled.

---

[3] In mid-March, Agency permitted the maternal grandmother to move back in her residence with the maternal grandfather and the children after concluding she was not a perpetrator.

At the disposition hearing, the social worker acknowledged the parents were active with services, including therapy, child endangerment classes and developmental parenting classes. Both parents had already completed the first phase of the developmental parenting classes, which included weekly home visits. Christopher was "fully participating in [individual] therapy . . . and . . . making . . . progress." Christopher also regularly visited the children and the visits went well. The social worker, having had observed some of Samantha's visits with the children, testified Samantha recognized verbal and nonverbal cues, responded to their needs, soothed them when necessary and appropriately set limits for Hailey. Nonetheless, the social worker recommended Hailey and Nathan remain with the maternal grandparents because there was no identified perpetrator, the parents did not accept the nonaccidental nature of Nathan's injuries and the children were young and unable to protect themselves.

The juvenile court found, by clear and convincing evidence, there would be a substantial risk of harm to the health, safety and protection of both children if they were returned to the family home. Noting the identity of the perpetrator was unknown and the young ages of the children, the court also found there were no alternatives to removal. The court declared Hailey and Nathan dependents, removed physical custody from the parents and placed the children in relative care. The court ordered the parents to comply with the case plan and set a review hearing for six months.

## DISCUSSION

Christopher contends the juvenile court's order removing Hailey from the custody of her parents was not supported by substantial evidence because (1) there was no evidence that she would be in danger if returned and (2) less drastic measures to removal were available to protect her.[4] We agree.

After the juvenile court finds a child to be within its jurisdiction, the court must conduct a dispositional hearing. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) At the dispositional hearing, the court must decide where the child will live while under the court's supervision. (*In re Michael D.* (1996) 51 Cal.App.4th 1074, 1082 [59 Cal.Rptr.2d 575].)

Before the court may order a child physically removed from his or her parents, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if returned home and there are no reasonable means

---

[4] Samantha has joined in Christopher's arguments pursuant to California Rules of Court, rule 8.200(a)(5).

by which the child can be protected without removal. (§ 361, subd. (c)(1); *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654 [54 Cal.Rptr.2d 722].) This is a heightened standard of proof from the required preponderance of evidence standard for taking jurisdiction over a child. (§§ 300, 355, subd. (a); *In re Basilio T.* (1992) 4 Cal.App.4th 155, 169 [5 Cal.Rptr.2d 450], limited on other grounds in *In re Cindy L.* (1997) 17 Cal.4th 15, 31–35 [69 Cal.Rptr.2d 803, 947 P.2d 1340].)

The elevated burden of proof for removal from the home at the disposition stage reflects the Legislature's recognition of the rights of parents to the care, custody and management of their children, and further reflects an effort to keep children in their homes where it is safe to do so. (See *In re Jasmine G.* (2000) 82 Cal.App.4th 282, 288 [98 Cal.Rptr.2d 93]; see also *In re Henry V.* (2004) 119 Cal.App.4th 522, 525 [14 Cal.Rptr.3d 496] ["The high standard of proof by which this finding must be made is an essential aspect of the presumptive, constitutional right of parents to care for their children."].) By requiring clear and convincing evidence of the risk of substantial harm to the child if returned home and the lack of reasonable means short of removal to protect the child's safety, section 361, subdivision (c) demonstrates the "bias of the controlling statute is on family preservation, *not* removal." (*In re Jasmine G., supra*, at p. 290.) Removal "is a last resort, to be considered only when the child would be in danger if allowed to reside with the parent." (*In re Henry V., supra*, at p. 525.)

The standard of review of a dispositional order on appeal is the substantial evidence test. (*In re R.V.* (2012) 208 Cal.App.4th 837, 849 [145 Cal.Rptr.3d 772].) In assessing this assignment of error on appeal, the substantial evidence test remains the appropriate standard of review, "bearing in mind the heightened burden of proof." (*In re Kristin H., supra*, 46 Cal.App.4th at p. 1654.) We consider the entire record to determine whether substantial evidence supports the juvenile court's findings. (*Ibid.*) "Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt." (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 695 [13 Cal.Rptr.3d 198].)

At the same time, jurisdictional findings are prima facie evidence the child cannot safely remain in the home. (§ 361, subd. (c)(1).) The parent need not be dangerous and the child need not have been actually harmed before removal is appropriate. (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136 [98 Cal.Rptr.2d 715], disapproved on another ground in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748, fn. 6 [110 Cal.Rptr.2d 828, 28 P.3d 876]; *In re Jamie M.* (1982) 134 Cal.App.3d 530, 536 [184 Cal.Rptr. 778].) Also, we do not pass on the credibility of witnesses, resolve conflicts in the evidence or weigh the evidence. Instead, we review the record in the light

most favorable to the juvenile court's order to decide whether substantial evidence supports the order. (*In re Isayah C., supra,* 118 Cal.App.4th at p. 694.) The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the court's findings or orders. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 947 [124 Cal.Rptr.2d 688].)

We agree with Christopher and Samantha that the juvenile court's dispositional order removing Hailey from the home was not supported by substantial evidence. Having reviewed the evidence presented in this case, we conclude the record does not support findings that there was a substantial danger to Hailey if she were returned home or that there were no less drastic alternatives than removal for protecting her.

■ The record contains no evidence suggesting Hailey was ever a victim of abuse in the parents' home, or that she suffered any harm as a result of the abuse that the court found with respect to Nathan. Evidence of past abuse is probative in determining whether a child is in need of the juvenile court's future protection (*In re Laura F.* (1983) 33 Cal.3d 826, 833 [191 Cal.Rptr. 464, 662 P.2d 922]), but such evidence alone does not meet the clear and convincing standard of proof required to justify removal of a child from his or her parents' custody, much less to justify removal of a sibling of the abused child. If it did, section 361, subdivision (c)(1) would be superfluous.

Further, the record in this case provides ample grounds to differentiate between Nathan and Hailey and shows the risk to Hailey of future abuse was strikingly less than the risk facing Nathan. Hailey was not an infant of only a few months old, who would be unable to articulate any abuse to which she might be subjected, and who would be completely isolated from the observations of mandated reporters of abuse. By the time of the disposition hearing, Hailey was a four-year-old child, with good language skills and an outgoing and social nature. She attended school where she had regular contact with teachers and other mandated reporters of any suspected abuse.

Moreover, there was abundant evidence that Christopher and Samantha were good parents who enjoyed a healthy relationship. There was no evidence of ongoing physical domestic violence between the parents; indeed there was no evidence of *any* physical domestic violence between the parents during their nine-year marriage. Neither parent had substance abuse problems, and there was no evidence that either suffered from mental health conditions, developmental delays or other social issues that often are at the root of dependency cases and might place children at continuing risk in the home. Christopher and Samantha were parents who started services at the earliest

opportunity, showed progress in the services and had meaningful and productive visits with the children. Even Agency participants in a team decision meeting early on in the case recognized Christopher and Samantha were good parents.

As noted above, there is no indication in the record that either parent ever personally inflicted any physical harm on Hailey, and the *only* evidence that either parent inflicted Nathan's eye injuries is disputed expert evidence that Hailey could not have done so. We do not fault the juvenile court for giving more weight to Dr. Davis's testimony than to Dr. Grogan's testimony for such weighing is the prerogative of the trier of fact—not an appellate court. The evidence was sufficient to support the court's determination, by a preponderance of the evidence, that as the sibling of an abused child, Hailey was at risk of future harm, and thus was appropriately found to be a dependent child. But the proof required to support the dispositional determination that Hailey should be removed from her parents' custody requires a greater degree of proof than merely by a preponderance of the evidence. Given all the circumstances presented here, the evidence with respect to the risk of harm to Hailey if she were not removed from the parents' home, does not so clearly satisfy the requisite "clear and convincing" standard of proof.

■ As to less drastic alternatives to removal for Hailey, we agree with the parents the evidence does not support the juvenile court's conclusion that there were no less drastic alternatives to Hailey's removal from her parents. The juvenile court noted its concern that both children were too young to protect themselves from abuse and the alternative of moving the parents (or one of them) into the grandparents' home would not provide for adequate supervision to protect the children. The court did not consider any other alternative. However, courts have recognized that less drastic alternatives to removal may be available in a given case including returning a minor to parental custody under stringent conditions of supervision by the agency such as unannounced visits. (*In re Henry V., supra,* 119 Cal.App.4th at p. 529; *In re Jeannette S.* (1979) 94 Cal.App.3d 52, 60 [156 Cal.Rptr. 262].) In such cases, "unannounced visits and public health nursing services [are] potential methods of supervising an in-home placement." (*In re Henry V., supra,* at p. 529.) The parents' developmental parenting class included weekly home visits by the instructor. Samantha's counsel brought up these alternatives as well as the fact that Hailey was attending school and had access to mandated reporters. Christopher's counsel told the court that his client was willing to move out of the family home. All such alternatives must be explored before concluding that removal of a minor from the home is necessary. (*Ibid.*) The record shows the juvenile court did not adequately consider them.

## DISPOSITION

The juvenile court's dispositional order as to Hailey is reversed. The case is remanded to the juvenile court for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

McIntyre, J., and Irion, J., concurred.