Filed 2/26/14  In re S.S. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re S. S., a Person Coming Under the Juvenile Court Law. | B249819 |
| | (Los Angeles County Super. Ct. No. CK98223) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| NICOLE S., | |
| Defendant and Appellant. | |

APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Philip Soto, Judge.  Affirmed in part, reversed in part.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

_____

# INTRODUCTION

Nicole S. (mother) appeals from the dependency court's judgment declaring her then-10-year-old daughter, S. S., a dependent of the court under Welfare and Institutions Code[1] section 300, subdivisions (a) and (b). Mother also appeals the disposition order removing S. from her custody pursuant to section 361, subdivision (c)(1).

We hold mother's use of a hair brush to physically discipline her daughter was sufficient to sustain jurisdiction on the counts alleged. However, in this case, we conclude the evidence of past physical abuse, standing alone, was insufficient to find S. would be unsafe if allowed to return to mother's home. Once the petition was filed, mother moved swiftly and earnestly to address the issues warranting dependency jurisdiction. At the time of the disposition hearing, there was no evidence to suggest mother would repeat the abusive conduct that led to her daughter's detention. There also were reasonable alternative measures that could have been taken to ensure S. would be protected without removing her from mother's custody.

"Because we so abhor the involuntary separation of parent and child, the state may disturb an existing parent-child relationship only for strong reasons and subject to careful procedures." (*In re Kieshia E.* (1993) 6 Cal.4th 68, 76.) Consistent with this principle, we reverse the disposition order. The judgment is otherwise affirmed.

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

**FACTS AND PROCEDURAL BACKGROUND**

Mother has no prior criminal history, no drug or alcohol dependencies, and no prior contact with the child welfare system. Mother completed high school, attended two semesters of community college, and has had consistent work as a nanny and house manager. One former employer wrote that mother handled her duties "masterfully" and "managed the house and children with compassion, intelligence and a very perceptive perspective using common sense." Mother maintains good relations with S.'s father, but has largely raised her 11-year-old daughter as a single mother.

1. *Detention*

On March 6, 2013, the Los Angeles County Department of Children and Family Services (the Department) detained S. after receiving a report that mother struck the child with a hair brush, leaving marks and bruises on her body. Mother was arrested on a charge of unlawful corporal punishment upon a child (Penal Code, § 273d, subd. (a)). The charge was dropped for lack of sufficient evidence.

During a counseling session earlier that day, S. told her therapist that mother hit her with a hair brush after she lied about completing a school reading assignment.[2] She said mother hit her right and left palms, left wrist, and upper arms with the brush. When S. asked mother to stop, mother reportedly hit her arm again. When S. attempted to push mother away, she said mother struck her thighs and bottom.[3]

---

[2]    Mother referred S. for in-home counseling due to S.'s inability to focus at school, complete school work, and follow through with directions. She also was concerned about S.'s difficulty expressing herself and interacting with peers. S. was diagnosed with Disruptive Behavior Disorder Not Otherwise Specified and was being assessed for Attention Deficit Hyperactivity Disorder. Mother said she wanted her daughter to be able to process her emotions and express herself effectively. The weekly counseling sessions were helping.

[3]    S. also reported mother "wacked" her with the assigned book on the top of her head. S. later explained that she was not hurt by the book and described it as "more of a tap on the head."

The social worker observed a two-inch long, one-inch wide bruise on S.'s left wrist. S. had similar bruising and swelling on her upper left arm and upper left thigh. The bruised areas were sensitive to the touch. S. also had four linear lines on the back of her thighs, which she reported were due to "previous beatings." A county nurse practitioner also examined S. and identified " 'faint linear marks' " on the right thigh, a " 'faint bruise with mild swelling' " on the upper arm, and a " 'faint pinkish bruise with mild swelling and [tenderness to touch]' " on S.'s left wrist.

S. reported she had been "beat" with the "listening" brush two other times in the past year and a half. The first time, she was struck with the brush on her palms when she went to the park without telling mother. The second time, mother hit her with the brush— leaving bruises on her ankle, buttocks, left arm and right hip area—when S. took a pair of goggles, without mother's permission, and lost them.

S. also said mother sometimes threatened to beat her, which made her "fearful." She said mother typically disciplined her by taking away privileges or hitting her with the brush. No other objects were ever used to discipline her. Though she reported having a "good relationship" with mother, when asked by the social worker if she felt safe returning to mother, S. responded, "not really." She later said she wanted to be with her mother, but did not want to be hit.

Mother admitted she hit S. with a brush, but denied seeing any bruising. Mother described the brush as wooden, with soft bristles, and flat behind the bristles "like a paddle." The words "S.'s Listening Brush" are written on the back.

Mother confirmed the recent incident stemmed from S. lying about completing a school reading assignment. Mother said she intended to "spank" S. on the palms with the brush three times because S. lied three times about completing the assignment. S. was instructed to put out her hands and mother struck her palms twice with the brush. When S. refused to put her hands out again, mother grabbed S.'s arm and spanked her bottom with

4

the brush twice.  Mother claimed this was the only time she struck S. anywhere other than on the palms.  She did not see any marks, bruises or swelling on S. after the incident.[4]

Mother admitted hitting S. with the brush on two prior occasions.  Regarding the park incident, mother explained she was very worried when she could not find S. and had contemplated calling authorities before finding her daughter at a friend's house.  Mother had a discussion with S. about "saying you're going somewhere and staying there," then "spanked her on her palms."  After striking S.'s palms, mother said she explained to S., " 'This is not because you're bad.  This is because [what you did] is so severe that there could be really hurtful consequences if you don't understand it.' "

As for the goggles incident, mother explained that she told S. not to take the goggles because they did not belong to her.  S. took the goggles anyway and lost them.  Mother said, " 'I spanked her that night after she had eaten dinner.  I explained to her she was being spanked because that was stealing.' "

Mother said she did not believe her discipline methods were excessive or inappropriate.  She said she usually disciplined S. by talking to her or taking away her toys.  Mother explained, " 'spanking is the last resort, but, I want it to be in a way that she remembers that this was wrong and so she learns from it.' "  She added, " 'I want to say it wasn't excessive because it wasn't done without an explanation.' "  She said she never disciplined S. " 'in the heat of the feelings[;] I wait until we can discuss it.' "  However, mother acknowledged, " '[d]efinitely looking back, there are different forms of discipline that could be used.' "  She added, " '[h]ad there been marks, yes, oh yes, that would have been excessive, but I don't believe I hit her hard enough to cause a mark.' "

---

[4]     With respect to the marks on S.'s arm, mother conceded it was possible that she missed S.'s palm and hit her wrist, but mother was adamant that she had not seen any marks, bruises or swelling.  S.'s therapist, to whom S. reported the incident on the day it occurred, also denied seeing any marks or bruises.  The therapist thought S.'s wrist "may have had some redness on it."

Mother agreed to participate in parenting classes, anger management, and conjoint counseling with her daughter. She pledged to cease using corporal punishment and agreed to receive services to learn alternative discipline methods.

On March 11, 2013, the Department filed a petition to declare S. a dependent under section 300, subdivisions (a) and (b), based on the three alleged instances of physical abuse. The juvenile court ordered S. to remain detained with temporary custody vested with the Department pending disposition.

2.      *Jurisdiction/Disposition Report*

On March 15, 2013—four days after the dependency petition was filed—mother began attending anger management classes. Less than a week later, mother began attending parenting classes. Mother also placed her name on four different agencies' waiting lists to receive individual counseling. In the interim, she sought counseling from the pastor at her church.

Mother was granted visitation with S. three times per week, three hours each visit. She attended every weekly visit, for the full time permitted, and called S. regularly. The foster mother said she had no concerns regarding the contact between mother and S.

S. was interviewed again on March 29, 2013. She confirmed the latest incident was the first time mother had hit her with the brush anywhere other than on her palms. She said she typically was disciplined "by being talked to" or losing privileges. When asked what it means to get "beat" with the brush, S. explained, " 'I have to put my hands out and my mom hits me with the brush on my palms.' "

S. denied being afraid of mother and said she wanted to go home. When the interviewer explained the Department's concerns over the type of discipline mother used, S. stated, " 'Then just tell her don't do it again and she won't. That's the kind of woman my mom is.' "

Mother and S. lived with another family of three adults who were very close friends. S.'s maternal grandmother had been the family's nanny, and they regarded mother and S. as part of their family. The family matriarch, who referred to S. as her granddaughter, confirmed mother's discipline methods typically involved scolding, lecturing or taking away S.'s privileges. She was aware mother used the "listening brush" to spank S., but said " 'It was never done in anger and it was meant to teach, that I know.' " She added, " 'Whenever S. was spanked it was way after the incident occurred. She was never spanked in the heat of the moment or any rage of any kind.' "

Another adult household member also confirmed mother's discipline methods typically involved " 'verbal reprimanding or the los[s] of privileges.' " She was aware of the three incidents in which S. had been hit with the brush, but explained, " 'those were extreme cases, that was not day to day.' "

In her March 28, 2013 interview, mother explained, " 'I honestly didn't know that spanking wasn't allowed with an object. I just thought [it was permitted] as long as you're not wailing on your child excessively.' " She added that the Department social worker had explained what is and is not permissible and stated, " 'Now I'm very versed in it. Now I know you're allowed to spank your child with an open hand on the bottom.' " Mother reaffirmed that she would use alternative discipline methods. She also pledged to dispose of the "listening" brush, which she had kept only to show authorities should they request it.

The Department's jurisdiction/disposition report noted mother's compliance with the recommended case plan, including her attendance at anger management and parenting classes within a week of S.'s detention. Under "Strengths," the report noted mother (1) has been cooperative with the Department; (2) has a strong bond with the child; (3) has support from the adults in her household; (4) has a high school diploma and some college education; (5) has consistent work history as a nanny and house manager; (6) is very articulate; and (7) has "stated that she is willing to change and is open to receiving services."

In its assessment and evaluation, the Department's report emphasized that S. disclosed, and mother admitted, the "listening" brush was used to hit S. as a form of

discipline; leaving marks, bruises and swelling on the child's body.  The report acknowledged that mother pledged not to use physical discipline in the future and to dispose of the "listening" brush, but contended, "[S]ince mother, the other household members, and even child S. have reported that the method used to discipline the child was neither excessive nor inappropriate, there is a concern that the mother may resort to using similar discipline methods again."  The report concluded, "Therefore, child S. is at risk of being reinjured due to the use of inappropriate discipline methods by mother."

3.  *Adjudication/Disposition Hearing*

On April 18, 2013, the juvenile court held a joint adjudication and disposition hearing.  S.'s counsel joined the Department in arguing the March 2013 incident constituted physical abuse and the petition should be sustained.  The juvenile court sustained the allegations under section 300, subdivisions (a) and (b), then requested a recommendation from S.'s counsel regarding disposition.

S.'s counsel recommended returning S. to mother's custody.  Counsel maintained there were reasonable means to protect S. while in mother's custody, and credited mother with enrolling in parenting and anger management courses shortly after the petition was filed.  Counsel underscored that S. had reported the incident to her therapist, and maintained that if family preservation services were in place, S. would be protected in mother's custody.

Mother's counsel echoed the point, emphasizing that S. was old enough to report the abuse if it ever occurred again.  Counsel also argued mother's initiative in addressing the issues that led to S.'s detention demonstrated she was unlikely to repeat the conduct.

The Department downplayed mother's earnestness, observing, "a lot of parents come in and tell the court that you have got their attention." The Department acknowledged "[w]e have her cooperation," but argued the "abuse is institutionalized in her home," citing mother's use of "the listening brush" and the fact the other adults in the home "never intervened on the numerous occasions where the mother was disciplining the child." The Department maintained S. should not be released to mother until mother completed counseling and the court received a report regarding "mother's thought process."

The juvenile court agreed with the Department and ordered S. removed from mother's custody pursuant to section 361, subdivision (c). The court's statements at the hearing did not include specific findings concerning substantial danger or reasonable alternatives to out-of-home placement. Nor was the clear and convincing evidence standard mentioned. The court considered whether the presence of other adults in the home sufficiently mitigated the risk of future harm, but found their presence insufficient because none had taken steps to intervene in the past. Apart from this, the court expressed its view that a 10-year-old child was too old to be physically disciplined, and stated mother needed to learn appropriate techniques for disciplining an older child. The court concluded, "it's not just that mother understands that and gets that now. The court has to know that she has developed, implemented and is ready to adhere to a plan by which she and the daughter can get along and we don't have this case coming back again."

4. *Order Returning S. to Mother's Custody*

On November 26, 2013, while this appeal was pending, the juvenile court ordered S. returned to mother's home. The order included findings that mother was in compliance with the case plan, return of S. to mother would not create a substantial risk of detriment to S., and continued jurisdiction is necessary.

## DISCUSSION

1. *Substantial Evidence Supports Jurisdiction*

Section 300, subdivision (a) authorizes jurisdiction where there is evidence "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical

9

harm inflicted nonaccidentally upon the child by the child's parent or guardian." For purposes of subdivision (a), " 'serious physical harm' does not include reasonable and age-appropriate spanking to the buttocks where there is no evidence of serious physical injury." (*Ibid.*) The term "serious physical harm" can be discerned by common intelligence as to what injuries fall within its reach. (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 438 (*Mariah T.*).)

In reviewing the juvenile court's jurisdictional findings, "we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; [and] we review the record in the light most favorable to the court's determinations . . . ." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.) Thus, the pertinent inquiry is whether substantial evidence supports the finding, not whether a contrary finding might have been made. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

Mother concedes striking S. with a hair brush constitutes "inappropriate physical discipline," but contends the evidence was insufficient to find S. suffered "serious physical harm." We cannot agree. Though the record contains varying accounts of S.'s injuries (see fn. 4, *ante*), the nurse practitioner who examined S. identified bruising and swelling that was sensitive to the touch in the areas where mother admitted striking S. with the brush. This evidence was sufficient to find S. suffered "serious physical harm" under section 300, subdivision (a). (See *In re Mariah T., supra,* 159 Cal.App.4th at p. 438 [evidence that mother struck three-year-old child with belt on stomach and forearms as form of discipline, leaving bruises on at least one occasion, sufficient to sustain finding of serious physical harm]; *In re David H.* (2008) 165 Cal.App.4th 1626, 1644 (*David H.*) [petition alleging child suffered "bruises, red marks, welts, and broken skin" inflicted intentionally by mother as a disciplinary measure using "a belt, cord, or ruler" sufficiently alleged serious physical harm].)

10

Contrary to mother's discussion of *Mariah T.*, the court in that case did not hold the evidence was insufficient to sustain a finding of serious physical harm with respect to the eight-year-old daughter. Rather, the court conceded "*for discussion's sake only* that the line on Mariah's back did not amount to serious physical harm." (*In re Mariah T., supra, , supra,* 159 Cal.App.4th at p. 438, italics added) The court nevertheless held jurisdiction over Mariah was appropriate, because the injuries to her three-year-old brother were sufficient to establish risk of future serious physical harm under section 300, subdivision (b) and (j). (*Mariah T.,* at pp. 438-439 ["*Even if* there was not enough evidence to support jurisdiction of Mariah under section 300, subdivision (a), mother forgets that the section 300, subdivision (b) and (j) allegations were based on the substantial risk of future serious physical harm her conduct posed to both children"], italics added.)

However, in citing *Mariah T.* and *David H.*, we do not mean to diminish the difference in severity between the parents' conduct in those cases and mother's conduct here. As mother points out, the mother in *David H.* struck her son with an electrical cord and belt 21 times and reportedly hit him many other times in the past as well. (*In re David H., supra,* 165 Cal.App.4th at p. 1629.) The mother in *Mariah T.* struck her eight-year-old daughter with a belt at least five times, struck her three-year-old son with a belt at least three times, and frequently hit both children with her open hand. (*In re Mariah T., supra,* 159 Cal.App.4th at pp. 432, 433.) We acknowledge mother's use of corporal punishment was less frequent, more measured, and mother was careful not to punish S. out of anger. Nevertheless, while these distinctions bear upon the finding of future risk (as we will discuss in connection with the disposition order), they do not negate the evidence showing the March 2013 incident, which left marks and bruises on S., resulted in serious physical harm to the child. That incident was sufficient to confer jurisdiction under section 300, subdivision (a). (See *In re David H.*, at p. 1644 ["in the absence of unusual circumstances not present here (such as a substantial lapse of time between the incident and the filing of a petition or the date of a jurisdictional hearing), an allegation that a child *has suffered* serious physical harm inflicted nonaccidentally by a parent or guardian is sufficient to establish jurisdiction under section 300, subdivision (a)"].)

2.   *The Disposition Order Is Not Supported by Substantial Evidence*

a.   *The appeal is not moot*

Before considering mother's challenge to the disposition order, we will address the Department's contention that the order returning S. to mother's custody renders mother's appeal moot.

" '[A]n action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed.' " (*In re Dani R.* (2001) 89 Cal.App.4th 402, 404.)  However, "[a]n issue is not moot if the purported error infects the outcome of subsequent proceedings." (*In re Dylan T.* (1998) 65 Cal.App.4th 765, 769.)

Mother's appeal from the disposition order is not moot because the order could have adverse consequences for mother in subsequent proceedings.  For instance, section 361.5, subdivision (b) states "[r]eunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence, . . . [¶] . . . [¶]  (3) [t]hat the child or a sibling of the child has been previously adjudicated a dependent pursuant to any subdivision of Section 300 as a result of physical or sexual abuse, that following that adjudication the child had been removed from the custody of his or her parent . . . pursuant to Section 361, that the child has been returned to the custody of the parent . . . , and that the child is being removed pursuant to Section 361, due to additional physical or sexual abuse."

S. has been adjudicated a dependent under section 300, subdivision (a), based on a finding she suffered serious physical harm inflicted nonaccidentally by mother.  Thus, the challenged disposition order could be invoked as a basis for denying mother reunification services in a future proceedings under section 361.5, subdivision (b)(3).  Because our reversal of the disposition order will have a practical, tangible impact on mother's legal status, her appeal from the order is not moot.  (Cf. *In re I.A.* (2011) 201 Cal.App.4th 1484, 1490.)

b.    *Substantial evidence does not support the substantial danger finding and reasonable protective measures were available without removing S. from mother's custody*

Mother contends the evidence was insufficient to remove S. from her custody under section 361 because (1) there was no evidence S. would be in danger if returned to mother's home; and (2) less drastic alternatives to removal were available to protect S.  We agree.

" 'The governing statute, section 361, subdivision (c), is clear and specific:  Even though children may be dependents of the juvenile court, they shall not be removed from the home in which they are residing at the time of the petition unless there is clear and convincing evidence of a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being and there are no "reasonable means" by which the child can be protected without removal.  [Citation.]  The statute embodies "an effort to shift the emphasis of the child dependency laws to maintaining children in their natural parent's homes where it was safe to do so." ' " [5]  (*In re Henry V.* (2004) 119 Cal.App.4th 522, 528.)

" '[I]n dependency proceedings the burden of proof is substantially greater at the dispositional phase than it is at the jurisdictional phase if the minor is to be removed from his or her home.' "  (*In re Henry V., supra,* 119 Cal.App.4th at pp. 528-529; *In re Cheryl H.* (1984) 153 Cal.App.3d 1098, 1111–1113 [burden of proof in jurisdictional phase is preponderance of the evidence; burden of proof in dispositional phase is clear and convincing evidence].)  "A dispositional order removing a child from a parent's custody is

---

[5]    Section 361, subdivision (c) provides in relevant part:  "A dependent child may not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following . . . :  [¶]  (1) There is a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody."

13

'a critical firebreak in California's juvenile dependency system' [citation], after which a series of findings by a preponderance of the evidence may result in termination of parental rights. Due process requires the findings underlying the initial removal order to be based on clear and convincing evidence." (*In re Henry V.*, at p. 530.)

"The elevated burden of proof for removal from the home at the disposition stage reflects the Legislature's recognition of the rights of parents to the care, custody and management of their children, and further reflects an effort to keep children in their homes where it is safe to do so. [Citations.] By requiring clear and convincing evidence of the risk of substantial harm to the child if returned home and the lack of reasonable means short of removal to protect the child's safety, section 361, subdivision (c) demonstrates the 'bias of the controlling statute is on family preservation, *not* removal.' [Citation.] Removal 'is a last resort, to be considered only when the child would be in danger if allowed to reside with the parent.' " (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 146.)

Nevertheless, "[t]he standard of review of a dispositional order on appeal is the substantial evidence test. [Citation.] In assessing this assignment of error on appeal, the substantial evidence test remains the appropriate standard of review, 'bearing in mind the heightened burden of proof.' [Citation.] We consider the entire record to determine whether substantial evidence supports the juvenile court's findings. [Citation.] 'Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt.' " (*In re Hailey T., supra,* 212 Cal.App.4th at p. 146.)

The Department contends evidence of mother's past corporal punishment, resulting in swelling, marks and bruising to S., was sufficient to support removal from mother's custody at the time of the disposition hearing. We disagree. "Evidence of past abuse is probative in determining whether a child is in need of the juvenile court's future protection [citation], but such evidence alone does not meet the clear and convincing standard of proof required to justify removal of a child from his or her parents' custody . . . . If it did, section 361, subdivision (c)(1) would be superfluous." (*In re Hailey T., supra,* 212 Cal.App.4th at p. 147; cf. *In re J.N.* (2010) 181 Cal.App.4th 1010, 1023 (*J.N.*), [" 'the past infliction of physical harm by a caretaker, standing alone, does not establish a

14

substantial risk of physical harm; "[t]here must be some reason to believe the acts may continue in the future." ' "].)[6]

Nor do we agree with the Department's contention that, "[a]t the time of disposition, no evidence indicated mother had successfully remediated her issues involving anger and parenting." To begin, this argument improperly assumes the burden rests with the parent to prove the issues warranting dependency jurisdiction have been "successfully remediated." However, section 361, subdivision (c), clearly places the burden on the Department to prove, by clear and convincing evidence, the child would be in substantial danger if allowed to remain with the parent. Moreover, contrary to the Department's contention, the record amply reflects mother's sincere and earnest commitment, at the time of the disposition hearing, to forsake corporal punishment and address the issues that led to her daughter's detention.

Immediately after the dependency petition was filed, mother started actively participating in parenting and anger management courses. She placed herself on four waiting lists for individual counseling and, in the interim, proactively sought counseling from the pastor at her church. She consistently visited and telephoned S., with no noted concerns by the foster mother. S. did not fear mother and wanted to return home. Contrary to the Department's assertion, mother's response to the detention of her daughter provided ample assurances that S. would not be exposed to future harm. (See *In re Hailey T., supra,* 212 Cal.App.4th at pp. 147-148 [no evidence of substantial danger where parents "started services at the earliest opportunity, showed progress in the services and had meaningful and productive visits with the children"]; *In re Jasmine G.* (2000)

---

[6]     The court in *J.N.* concluded evidence that father was intoxicated during a traffic collision in which his children were passengers was insufficient to sustain jurisdiction under section 300, subdivision (b). Notwithstanding the profound seriousness of father's endangering conduct, because subdivision (b) permits jurisdiction "only so long as is necessary to protect the child from risk of suffering serious physical harm or illness" (§ 300, subd. (b)), the *J.N.* court concluded jurisdiction was not supported where "there was no evidence from which to infer there is a substantial risk such behavior will recur." (*In re J.N., supra,* 181 Cal.App.4th at p. 1026.)

15

82 Cal.App.4th 282, 288-289 [reversing disposition order premised on parents' past inappropriate corporal punishment, observing case was "remarkable for the clear and convincing evidence that it *was* safe to return [child] to either of her parent's homes" where parents had forsworn corporal punishment of teenagers, attended parenting classes, undergone therapy to improve their parenting skills, and child had no fear of either parent and wanted to go home].)

The evidence also was uncontested that mother did not strike S. out of anger or impulse. Though the juvenile court could reasonably conclude mother's use of the "listening brush" was inappropriate, the record demonstrates S. typically was disciplined verbally or by losing privileges, mother used physical discipline only as a last resort, and, when the brush was used, mother was careful to wait until her anger had passed so she could discuss the reason for the punishment with her daughter. Mother acknowledged striking her child hard enough to leave bruising or swelling was inappropriate and constituted abuse. She expressed remorse and pledged not to physically discipline S. in the future. There was no evidence to question the sincerity of mother's commitment and no evidence from which to infer that S. would be in substantial danger if returned to mother's home. (Cf. *In re Jasmine G., supra,* 82 Cal.App.4th at p. 292 [holding evidence that child had been "disciplined at times 'in anger' " was *not* substantial where "the uncontroverted testimony was that both [parents] had forsaken corporal punishment"].)

As for less drastic alternatives to removal, we agree with mother that the evidence was insufficient to find S. could not be reasonably protected were she to remain in mother's custody. The juvenile court noted its concern that other adults living in the home had not intervened to stop the corporal punishment in the past. The court did not consider any other alternatives. However, appellate courts have recognized that less drastic alternatives to removal may be available in a given case, including returning a minor to parental custody under stringent conditions of supervision by the Department, such as unannounced visits. (See *In re Hailey T., supra,* 212 Cal.App.4th at p. 148; *In re Henry V., supra,* 119 Cal.App.4th at p. 529 ["unannounced visits and public health nursing services [are] potential methods of supervising an in-home placement"].)

16

Notably, when the triggering incident occurred, S. was receiving weekly in-home counseling. It was S. who reported the incident to her therapist, and her therapist who, in turn, reported the abuse to the Department. (See *In re Hailey T., supra,* 212 Cal.App.4th at p. 148 [noting parents' developmental parenting class included weekly in-home visits by the instructor who could have supervised in-home placement].) At the time of the disposition hearing, S. was 10 years old, attending school, and had daily access to officials mandated to report any suspected abuse. (See *id.* at p. 147 [finding moderate risk of future abuse where four-year-old child attended school and had regular contact with teachers and others who could report abuse].) Buttressed by unannounced visits, these resources would have mitigated the risk of future physical harm. Both mother's counsel and S.'s counsel raised these measures at the disposition hearing. The record shows the juvenile court did not adequately consider these alternatives. (See *id.* at p. 148 ["All such alternatives must be explored before concluding that removal of a minor from the home is necessary"]; *In re Henry V., supra,* 119 Cal.App.4th at p. 529.) In any event, the evidence was insufficient to support an implied finding that these measures would not have reasonably protected S. in mother's home.

## DISPOSITION

The disposition order removing S. from mother's custody pursuant to section 361, subdivision (c), is reversed. The judgment is otherwise affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.

18