Filed 11/30/15  In re Elijah I. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ELIJAH I., a Person Coming Under the Juvenile Court Law. | B261846 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>ASHLEY I.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK87587) |

        APPEAL from an order of the Superior Court of Los Angeles County, Julie Fox Blackshaw, Judge.  Affirmed.

        Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

        Richard D. Weiss, Chief Deputy County Counsel, Dawyn R. Harrison, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

INTRODUCTION

Ashley I. appeals from the disposition order of the juvenile court removing newborn Elijah I. from her custody (Welf. & Inst. Code, § 361, subd. (c))[1] and declining to place the baby with her in her residential drug treatment facility (§ 319). We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Elijah was born in August 2014 with a positive toxicology screen for amphetamines. Mother acknowledged using that drug while pregnant and has a history of abusing cocaine, opiates, benzodiazepine, heroin, amphetamines, and methamphetamines. She told the social worker that the Department of Children and Family Services (the Department) has " 'all the information saved in your files because [the Department] took away my other son, Roger because of my drug abuse. But, I have tried to get clean and sober.' " Roger was declared a dependent of the juvenile court in 2012 and placed with the maternal grandmother who became the child's legal guardian with mother's consent. The maternal grandmother did not trust mother to remain sober. Grandmother reported that mother's preferred drug was heroin and she had overdosed four times. Mother promised the social worker investigating Elijah that she would check into a rehabilitation program the following morning. The Department detained Elijah and placed him in foster care.

At Elijah's detention hearing held on September 9, 2014, the juvenile court ordered the Department to submit a report that assessed the possibility of placing Elijah with the maternal grandmother, maternal aunt, or with mother in her drug-treatment facility. (See § 319, subd. (d)(3).)

The Department's ensuing report explained that the social worker attempted to contact mother at her recovery program on September 10, 2014, but was told mother was on the telephone and would call back "at a later time." The report stated that "[i]f mother contacts the undersigned prior to the hearing, mother's wishes will be forwarded to Court via a Last Minute document." In advance of the September 17, 2014 hearing date, the

---

[1]     All further statutory references are to the Welfare and Institutions Code.

Department filed a Last Minute Information For the Court expressing its opinion that it was "too premature to release the child, Elijah to [mother's] care at this time." The Department reasoned that Roger was detained from mother because of her substance abuse and so mother had not resolved her drug abuse issues.

American Recovery Center (ARC) sent a letter dated September 16, 2014, to the court recording that mother entered its chemical dependency program on September 10, 2014, and wanted Elijah to reside in the facility with her. There was a bed available for the infant.

In October 2014, the juvenile court sustained the petition, to which mother pled no contest, alleging mother's drug abuse. (§ 300, subd. (b).) In December 2014, the juvenile court sustained a subsequent petition (§ 342) alleging drug abuse on the part of father, Damon F.

Father, who is not a party to this appeal, admitted he has been abusing marijuana and methamphetamines " 'for a long time.' " He used cocaine in the 1980's and served time twice in that decade because of that drug. Father claimed that he used methamphetamine 20 days earlier. He stated, " 'Crack took my life. Meth[.] saved my life and the program allows me to live my life.' " Father was not then in a substance abuse program because he did not believe it was necessary. He does attend Narcotics Anonymous (NA) meetings but has no sponsor.

Mother met father at a substance abuse program and plans to live with him when she leaves her current facility. Although mother told the Department father was not using drugs, she also told a social worker that father's drug of choice is cocaine and that he was currently using. The maternal grandmother has seen father under the influence of drugs. According to the grandmother, father's choice of drugs is " 'speed' " and cocaine and he is not willing to test or participate in a substance abuse program.

At the end of November 2014, mother was arrested on an outstanding warrant issued in Orange County. According to ARC, mother was absent until December 18, 2014.

The Department's report in advance of the disposition hearing reveals that father persisted in his refusal to drug test. In January 2015, father persuaded mother to quit her receptionist job and told her he did not want her to continue participating in the rehabilitation program. The maternal grandmother twice lent her car to father so that he could pick mother up and take her to visit the children. However, mother and father never appeared for the two visits. Although grandmother eventually refused to lend her car to father, mother left her program a third time, ostensibly to visit Elijah, but spent the day with father instead.

ARC reported in January 2015 that mother had been compliant. ARC wrote that it "supports the family reunification process and has on site parents with children components."

In advance of the disposition hearing, mother submitted a written request that the juvenile court apply section 319, subdivision (d)(3) and consider placing Elijah with her in her certified substance abuse treatment facility. At the February 3, 2015 hearing, mother's counselor at ARC, Dina Torres, testified that she knew mother who had been at the facility for six months. Torres testified that ARC is not "a lockdown facility" and so mother can simply walk away. If the court issued orders restricting mother from taking her child out of the facility unsupervised, then ARC would advise mother not to leave. ARC could arrange for a peer to leave the facility with mother or a staff member to accompany mother to the store.

Torres explained that mother has started drinking alcohol when she was 14 or 15 years old. Mother was in another ARC facility before. Torres explained that mother works with a sponsor, is fully engaged, "completely treatment compliant," and "non-problematic." Mother knows what she needs to do as a recovering addict, which includes staying away from unhealthy people, places, and situations. If father is using, then mother needs to stay away from him. Torres was unaware that mother was not visiting Elijah when she left the facility for visits, notwithstanding mother told ARC that she was going to see the child. Nor did mother tell Torres that she had been spending time with father.

4

Mother testified that she visited Elijah five times in five months, which is less frequent than the court ordered. Mother blamed the grandmother who had difficulty bringing Elijah to ARC. However, two of the visits occurred at the grandmother's house, she testified. The last time mother was in a rehabilitation facility, she remained sober for almost a year. She blamed grandmother for her relapse. Mother believed the most recent facility provided the better program.

Elijah's attorney opposed placing the child with mother even if a chaperone could shadow mother whenever she left ARC. Counsel argued that the maternal grandmother was more credible about whether mother had missed visits. Counsel observed that Torres knew very little about mother's case over her lifetime of addiction. Release of the child to mother was inappropriate because mother could leave at any time; mother had missed a significant period of treatment during her incarceration; mother had lied to ARC about her visits; and mother was still in a relationship with father, which poses a risk to her recovery. Elijah's attorney asked the court to allow unmonitored, overnight visits at ARC and monitored visits outside the facility.

Finding clear and convincing evidence from the record, the juvenile court removed Elijah from mother's custody (§ 361, subd. (c)). Adopting Elijah's attorney's recommendation, the court declined to place the child with mother at ARC under section 319, subdivision (d)(3), but allowed overnight and unmonitored visits at mother's facility. The court found mother was not completely forthright or credible, whereas the grandmother's statements about mother's missed visits were more believable. The court also ordered reunification services for the parents. Mother's timely appeal followed.

CONTENTION

Mother contends the juvenile court erred in removing Elijah from her custody (§ 361, subd. (c)) and failing to place Elijah with her in her drug treatment facility (§ 319, subd. (d)(3)).

5

Pursuant to section 361, subdivision (c), "[b]efore the court may order a child physically removed from his or her parents, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal. [Citations.]" (*In re Hailey T*. (2012) 212 Cal.App.4th 139, 145-146, citing, § 361, subd. (c)(1).) "The high standard of proof by which this finding must be made is an essential aspect of the presumptive, constitutional right of parents to care for their children." (*In re Henry V.* (2004) 119 Cal.App.4th 522, 525.) However, "[t]he standard for review of a dispositional order on appeal is the substantial evidence test." (*In re Hailey T*., at p. 146.) " ' " 'When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. [Citation.] In making this determination, all conflicts [in the evidence and in reasonable inferences from the evidence] are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.]' " [Citation.] While substantial evidence may consist of inferences, such inferences must rest on the evidence; inferences that are the result of speculation or conjecture cannot support a finding. [Citation.]' [Citation.] '[W]e must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact. [Citation.]' [Citation.]" (*In re Cole Y*. (2015) 233 Cal.App.4th 1444, 1451-1452.)

Section 319, subdivision (d)(3) provides, "In order to preserve the bond between the child and the parent and to facilitate family reunification, the court *shall consider* whether the child can be returned to the custody of his or her parent who is enrolled in a certified substance abuse treatment facility that allows a dependent child to reside with his or her parent. The fact that the parent is enrolled in a certified substance abuse treatment facility that allows a dependent child to reside with his or her parent shall not be, for that reason alone, prima facie evidence of substantial danger. The court shall

specify the factual basis for its conclusion that the return of the child to the custody of his or her parent would pose a substantial danger or would not pose a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child." (Italics added.)

Both section 319 and section 361 require the juvenile court to state the facts on which it bases its decision. (§§ 319, subd. (d)(3) & 361, subd. (d).)

Mother argues that the juvenile court erred by removing Elijah from her custody pursuant to section 361, subdivision (c); declining to place him with her at ARC (§ 319, subd. (d)(3)); and failing to specify the basis for these rulings.

The juvenile court clearly stated the basis for its rulings: The court stated, with respect to section 319, subdivision (d)(3), that it viewed mother's enrollment at ARC as a positive factor (i.e., that her enrollment was not, "for that reason alone, prima facie evidence of substantial danger" as stated in section 319, subdivision (d)(3)). The court specifically examined Elijah's counsel about placing Elijah with mother at ARC with a chaperon in case mother sought to leave the premises with the baby. In response, counsel listed the reasons that placing Elijah with mother at ARC would pose a substantial danger to the baby's physical health, safety, protection, or physical or emotional well-being. Counsel cited the length of mother's addiction – since age 14 or 15; mother's relapse despite rehabilitation; her ability to leave ARC with Elijah at any time; and mother's continued association with father, which puts mother's recovery at risk; and the fact that mother had been lying to ARC about her visits. Counsel also explained how Torres appeared to know very little about mother's case. After this explanation, the court stated it would "adopt" Elijah's counsel's recommendation. Juvenile courts are required to "*consider*" placement with a parent at a drug treatment facility. (§ 319, subd. (d)(3), italics added.) Manifestly, the court here did consider placing Elijah with mother at ARC and found, for the reasons both it and Elijah's attorney stated, that placing the baby with mother at ARC would pose a substantial risk to the child. The court identified sufficient facts underlying its section 319, subdivision (d)(3) order.

Furthermore, these facts form the basis for the juvenile court's order under section 361, subdivision (c) removing Elijah from mother's custody. Additional evidence in the Department's reports and testimony support that ruling, mother's contention to the contrary notwithstanding. Mother intends to live with father after she leaves ARC. But father is an admitted drug abuser who refuses to enter rehabilitation or even to test. Thus, mother is spending time with a drug abuser while lying to ARC about what she is doing. Father, who has a strong influence over mother as evidenced by the fact that he persuaded her to give up her receptionist job, does not want mother to remain at ARC. Ample evidence supports the juvenile court's finding by clear and convincing evidence that returning Elijah to mother at ARC poses substantial risk to the child. (§ 361, subd. (c).)

To argue that there "was no evidence" that Elijah would have been "in *substantial physical dange*r if placed with mother at ARC," mother cites only her testimony and that of her ARC counselor, Torres. However, the court made a specific finding that mother was not credible and we may not reevaluate that conclusion. Furthermore, as Elijah's attorney observed, Torres did not know much about mother's case. Torres testified on February 3, 2015 that mother had been at ARC for six months, which is impossible given mother only enrolled on September 10, 2014, five months earlier. Torres testified that mother had left ARC for "a few days [because] she had some legal issues she had to take care of." Yet, mother was actually incarcerated for 22 days, i.e., three weeks.[2] Torres also did not know that mother had claimed to be visiting Elijah when she was actually spending time with father, an unrepentant drug abuser. Nor did Torres know how many times mother had relapsed after rehabilitation. The juvenile court had ample evidence on which to discount Torres' testimony.[3] On appeal, mother cited no evidence other than

---

[2]   By our computation based on ARC's letters to the juvenile court, mother had been at ARC for 125 days, or just over 4 months and four days, as of the February 3, 2015 disposition hearing.

[3]   We reject mother's contention that placement of Elijah with mother at ARC "would have promoted family reunification because Mother was not getting the visitation which the juvenile court had ordered." The evidence shows that at least twice mother's

her own discredited testimony and that of Torres to support her argument that Elijah would be safe in her custody at ARC.

Finally, mother argues that the Department did not comply with the juvenile court's order to address the possibility of placing Elijah with mother at ARC. To the contrary, in response to the court's order to research placement at ARC, the Department tried to reach mother there, but she was unavailable. The Department stated that it would report to the court if mother called back. After ARC wrote its letter indicating it had a bed for Elijah, the Department opined that it was "too premature to release the child, Elijah to [mother's] care at this time," and cited its reasons: Roger was a dependent of the juvenile court because of mother's substance abuse and Elijah was born with a positive toxicology screen a mere two years later, and so mother had not resolved her drug abuse issues. The Department responded to the court's order to consider the advisability of placing the baby with mother at ARC.

---

failure to visit the child was the result of her choice: she opted to spend the day with father rather than to visit the baby.

DISPOSITION

The order appealed from is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

EDMON, P. J.

LAVIN, J.