Filed 5/27/15  In re Jesse R. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JESSE R., JR., et al., Persons Coming Under the Juvenile Court Law. | B255650 (Los Angeles County Super. Ct. No. DK00355) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JESSE R., SR.,<br><br>        Defendant and Appellant. | |

        APPEAL from orders of the Superior Court of Los Angeles County, Carlos E. Vasquez, Judge.  Affirmed.

        Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant.

        Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

INTRODUCTION

Jesse R., father of Jesse R., Jr. (age 14), J.R. (age 12), and Jimmy R. (age 8), appeals from the orders of the juvenile court removing the children from his custody (Welf. & Inst. Code, § 361, subd. (c))[1] and transferring the case to Kern County, California. (§ 375.) We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The family*

When this dependency was initiated, the children lived with father and his wife, Beverly R., and their children Gloria R. and Kai R.[2] The children's mother, Angelica R., was living in Kern County.

2. *Father's history with Child Protective Services*

Father has extensive involvement with child welfare services. In 2008, the Kern County Juvenile Court declared the three children dependents because father physically abused them. The reunification plan required father to complete anger management and domestic violence classes, substance abuse counseling, and to undergo drug testing. Mother failed to reunify but the children were returned to father in December 2010.

Less than a year later, child protective services in Kern County again detained the children from father, this time because he was smoking "posh," aka, "spice." The National Institute on Drug Abuse has designated five active chemicals most frequently found in "posh" or "spice" as Schedule I controlled substances, and so selling, buying, or possessing them is illegal.[3] The drug causes seizures, increased blood pressure, vomiting, and disorientation. Father was giving the drug to Jesse and J.R. The court also found father was still physically disciplining the children by spanking them, hitting them on the

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     Beverly R., Gloria R., and Kai R. are not at issue in this appeal.

[3]     See <http://www.drugabuse.gov/publications/drugfacts/spice-synthetic-marijuana> [as of Apr. 2, 2015].

head, and using a spiked belt on them. Father's reunification services were terminated in that dependency in September 2011. The court placed the children with mother and terminated jurisdiction with a family law order granting mother physical custody.

Apart from father's three older children at issue in this case, Gloria R., father's child with Beverly, was the subject of two petitions filed in 2010 and 2011, alleging the child was at risk because of father's drug abuse and domestic violence. Also, Beverly had bruised arms and father hit her in the head several times, choked, and sexually assaulted her. Gloria R. was detained from father and placed with Beverly.

The children were returned to father's custody in December 2012, after mother was arrested. Father resumed physically disciplining the children with a belt.

Father also has a criminal history. He was convicted twice of domestic violence. His first drug-related arrest was in 1997, and he was convicted of possession of methamphetamine in Oklahoma in 2007. He was also convicted of assault with a deadly weapon in 1998, possession of a dangerous weapon, and violation of a domestic violence restraining order in 2009.

3. *The current dependency*

The Los Angeles County Department of Children and Family Services (the Department) received a domestic violence referral in July 2013. Father assaulted Beverly who obtained a temporary restraining order against him. Father disclosed that he had been using drugs for many years, was a recovering addict, and had just relapsed after a two-year period of sobriety. He tested positive for amphetamines and methamphetamines in July 2013.

The Department filed a petition. The juvenile court detained the children from father and granted him monitored visits. After father pled no-contest, the court declared the children dependents based on father's history of substance abuse, his recent positive test for methamphetamine and amphetamine, and his inappropriate physical discipline of Jimmy by hitting the child with a belt causing bruising (§ 300, subd. (b) [neglect]).

Meanwhile, at the end of July 2013, father began a six-month substance abuse program and produced nine negative test results between August 2013 and February 2014. He missed one test in October 2013.

By the disposition hearing, father had completed his drug treatment program along with a 12-week parenting education course. Father's unmonitored visits went well. Although father claimed he had completed individual counseling that addressed anger management and domestic violence issues, he never provided a certificate of completion or any progress reports.

4. *The disposition order*

Father, joined by the children, requested the court release the children to his custody. Although the juvenile court commended father for his efforts at drug treatment, it did not "believe" that releasing the children to his custody "would be prudent at this point given the lengthy history" including the sustained allegations in this and the prior dependencies. The juvenile court removed the children from father's custody (§ 361, subd. (c)) and ordered him to undergo reunification services but credited him for the programs he had completed. The court granted father unmonitored overnight visits.

The Department requested that the juvenile court transfer the case to Kern County. The Department reasoned that it had found no prospective adoptive parents in Los Angeles County and a move to Kern County would bring the children closer to their parents to ensure visitation. Father objected to the transfer even though he was living in Kern County. Father explained that the case concerning the children's half-sibling Gloria R. remained in Los Angeles County, and father did not want to interrupt the children's schooling or the services they were receiving from the Department. Mother wanted the case transferred to Kern County because she lacked the means to travel to Los Angeles to visit the children. The juvenile court ordered the case transferred to Kern County. Father appealed.

4

5. *Kern County*

We granted the Department's request to take judicial notice of minute orders from the Kern County Juvenile Court entered after father filed his appeal. Those minute orders show that the Kern County Juvenile Court accepted transfer of this case. In June 2014, a social worker in Kern County Department of Human Services placed the children in foster care in Ridgecrest where father lives, and began providing them with child welfare services. In June 2014, the Kern County Juvenile Court ordered that father's visits again be supervised.

CONTENTIONS

Father contends the juvenile court's removal order was not supported by the evidence and its transfer order was error.

DISCUSSION

1. *The juvenile court had sufficient evidence to justify removing the children from father's custody at the disposition hearing.*

Section 361, subdivision (c) directs, "[b]efore the court may order a child physically removed from his or her parent, it must find, by clear and convincing evidence, that the child would be at substantial risk of harm if returned home and that there are no reasonable means by which the child can be protected without removal. [Citations.]" (*In re Cole C*. (2009) 174 Cal.App.4th 900, 917, citing § 361, subd. (c)(1).)

When " 'determining the appropriate disposition, the court shall receive in evidence the social study of the minor made by the probation officer, any study or evaluation made by a child advocate appointed by the court, and such other relevant and material evidence as may be offered.' [Citation.] This statutory command envisions that the juvenile court will be provided with a broad spectrum of evidence shedding light on the circumstances of the minor and his or her family. [Citation.] Of necessity, in virtually every case, the court will have before it conduct or circumstances of family members not pleaded in the petition." (*In re Rodger H*. (1991) 228 Cal.App.3d 1174, 1183, quoting from § 358, subd. (b).) "In this regard, the court may consider the parent's *past conduct* as well as present circumstances. [Citation.]" (*In re Cole C*., *supra*,

5

174 Cal.App.4th at p. 917, italics added.)  Furthermore, the "parent need not be dangerous and the child need not have been actually harmed for removal to be appropriate.  The focus of the statute is on averting harm to the child.  [Citations.]" (*Ibid.*)  "The court's principal concern is a disposition consistent with the best interests of the minor." (*In re Rodger H.*, *supra*, at p. 1183.)

While the juvenile court must make its finding under section 361, subdivision (c) by clear and convincing evidence, on appeal, we review the order for substantial evidence.  (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216, fn. 4.)

Father contends that the order removing the children from his custody was not supported by substantial evidence because by the time of the disposition hearing, he had completed a six-month substance abuse program, a parenting program, individual counseling, and only missed one drug test.  He adds that he had unmonitored visits, which had just been liberalized to overnight visits.  He claimed to be able to refrain from using physical discipline, and observed that as the children were in school, they were in contact with mandated reporters in case he hits the children again.  Father notes that the Department changed its original proposal to deny him reunification services, ultimately recommending services be provided.  He points out that the children's counsel joined father in his request for return of the children.  The contention is unavailing.

The record here fully supports the juvenile court's removal order.  The court properly considered the conduct and circumstances of the family not pleaded in the petition, such as father's extensive history with child protective services in both Los Angeles and Kern Counties -- which include not only the children in this case but also Gloria's two dependencies -- and father's failure to benefit from prior case plans.  Reunification services clearly did not work.  The problems that led to the children's removal this time are the same ones that have reoccurred since 2008:  substance abuse and violence.  Father has undergone reunification services that include anger management, domestic violence, and substance abuse counseling.  Yet, each time the children were returned to his custody, they were re-detained for the same allegations.  The purpose of the statute is to prevent harm to the children.  Given father's extensive

and unremediated history of substance abuse and violent behavior with both his children and his wife, the court could reasonably conclude there was a substantial danger to the children's emotional and physical health and safety if they were not removed from father's custody.[4]

We reject father's assertion that removal was improper because he had completed so much of his case plan before the disposition hearing was held. First, father's claim to have completed individual counseling is not supported by the record which contains no certificate of completion or progress report. Father has been abusing drugs for at least two decades and has relapsed, and so the juvenile court could reasonably conclude that this most recent course of drug treatment, lasting only six months, was an insufficient amount of time. (See *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform."]; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423-424 [sobriety for seven months is not enough].) Father's promise to refrain from hitting the children is likewise insufficient, as the purpose of section 361, subdivision (c) is to prevent harm before it occurs. Finally, although the juvenile court in Los Angeles liberalized father's visits, we take judicial notice of the fact that the visits are once again monitored in Kern County.

We likewise reject father's contention that there were reasonable means to protect the children without removal from his custody. Father's extensive, unsuccessful history with child protective services is evidence that less restrictive means short of removal would not have protected the children. Although the Department initially advocated against providing services to father (§ 361.5, subd. (b)(10) [the court may deny reunification services for a parent who failed to reunify and has not made reasonable effort to treat the problems that led to removal of sibling]), its decision instead to request

---

[4]     As this family has a history with child protective services, father's reliance on *In re Hailey T.* (2012) 212 Cal.App.4th 139 is unavailing. The family in that case had no prior involvement with child welfare services. (*Id.* at p. 143.)

7

services is not an acknowledgment that the children would be safe in his care. The Department continued to recommend removal, signifying its opinion that a longer term of sobriety, individual counseling, and more successful visits were necessary before the children could be safely returned to father's custody.[5] Sufficient evidence supports the juvenile court's finding by clear and convincing evidence that there was a substantial risk to the children's physical or emotional well-being if they were returned to father's care. (§ 361, subd. (c).)

2. *The juvenile court did not err in transferring the case to Kern County.*

Father contends that the juvenile court erred in transferring the case to Kern County, notwithstanding father and mother both reside there. His argument focuses on the failure of the court to state on the record its finding that transfer would promote the children's best interest.

Section 375 allows a juvenile court to transfer jurisdiction to the county of residence of the person who would be legally entitled to the custody of the child were it not for the dependency. (§ 375, subd. (a).)[6] California Rules of Court, rule 5.610 defines the child's residence as "the residence of the person who has the legal right to physical

---

[5] Father's proposed protections for the children short of removal, i.e., unannounced visits and in-home services are not reasonable as they would not avert harm. The services father received in the past did not prevent drug-abuse relapse, or stop the physical or domestic violence. Father admitted relapsing in July 2013 simply because the Department was investigating him.

[6] Section 375, subdivision (a) reads in relevant part, "Whenever a petition is filed in the juvenile court of a county other than the residence of the person named in the petition, or whenever, subsequent to the filing of a petition in the juvenile court of the county where that minor resides, the residence of the person who would be legally entitled to the custody of the minor were it not for the existence of a court order issued pursuant to this chapter is changed to another county, the entire case may be transferred to the juvenile court of the county where that person then resides at any time after the court has made a finding of the facts upon which it has exercised its jurisdiction over the minor, and the juvenile court of the county where that person then resides shall take jurisdiction of the case upon the receipt and filing of the finding of the facts upon which the court exercised its jurisdiction and an order transferring the case."

custody of the child according to prior court order . . . ." (Cal. Rules of Court, rule 5.610(a)(1).)

After the juvenile court declares the child a dependent, and after it "determines the identity and residence of the child's custodian, the court *must consider* whether transfer of the case would be in the child's best interest. The court may not transfer the case unless it determines that the transfer will protect or further the child's best interest." (Cal. Rules of Court, rule 5.610(e), italics added.)

Although the juvenile court must consider whether an inter-county transfer would be in the children's best interest, nothing in section 375 or the Rules of Court mandate that such a finding be made on the record, father's contention to the contrary notwithstanding. In contrast are section 366.21, subdivisions (e) and (f) which mandate that the court "specify the factual basis for its conclusion . . . ." and section 361, subdivision (d), which requires the court to "state the facts on which the decision to remove the minor [from a parent's custody] is based." The Legislature knows how to compel courts to make findings on the record but did not include that requirement in section 375. (See *Southern California Edison Co. v. Public Utilities Com.* (2014) 227 Cal.App.4th 172, 189.) Where section 375 does not explicitly command the court to make findings on the record, we will presume that the juvenile court properly understood and followed established law (Evid. Code, § 664) and in the absence of contrary evidence to rebut that presumption, we infer the necessary findings. Accordingly, we review the implied findings that the children's best interest would be served in the Kern County Juvenile Court for abuse of discretion. (*In re J. C.* (2002) 104 Cal.App.4th 984, 993.)

The record here contains no evidence showing that the juvenile court failed to consider the children's best interest. The court specified it was adopting the Department's recommendation. That recommendation explained that by transferring the case to Kern County, the court could assure that the children could visit both parents. The court knew that the children's legal residence is Kern County where their mother lives and that the most recent court order had given mother custody. (Cal. Rules of

9

Court, rule 5.610(a).)  Indeed, father acknowledges that his legal residence is also Kern County.

Father finally argues that transfer to Kern County would not be in the children's best interest because it would disrupt their schooling and the services they were receiving.  The children's interest in reunification outweighs their interest in staying in any particular school.  Moreover, the children have lived in Kern County before, and so logically their Los Angeles schooling was likewise new to them.  Nor has father demonstrated how the services the children are receiving in Kern County are qualitatively different than those they would get in Los Angeles County.  The juvenile court did not abuse its discretion in transferring the case to Kern County where both parents reside.

DISPOSITION

The orders are affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**




ALDRICH, J.



We concur:



EDMON, P. J.




KITCHING, J.