Filed 11/7/13  In re Isabella T. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re ISABELLA T., a Person Coming Under the Juvenile Court Law. | B248146 (Los Angeles County Super. Ct. No. CK61512) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ARMANDO T.,<br><br>Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Anthony Trendacosta, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and Navid Nakhjavani, Deputy County Counsel for Plaintiff and Respondent.

Armando T. (father) appeals the juvenile court's order removing his daughter, Isabella, from his custody. Father was incarcerated at the time of Isabella's birth in September 2010, has never had physical custody of her, and was not expected to be released from prison until 2023. Nonetheless, he maintains the juvenile court erred by not placing Isabella in his custody so that he could make an appropriate plan for her. Father also challenges the juvenile court's failure to make a visitation order. We hold the juvenile court's findings and order were supported by substantial evidence, and affirm the orders.

## I. FACTS AND PROCEDURAL HISTORY

At the time the dependency proceedings commenced, Isabella lived with her mother, her half-brother N.G. (born in 2003), and N.G.'s paternal grandparents, Mr. and Mrs. G., who have legal custody of N.G. The family came to the attention of the Department of Children and Family Services (DCFS) in September 2012, when a referral alleged that Malissa T. (mother) abused methamphetamine, marijuana and alcohol, causing her to neglect Isabella and N.G., and that mother and N.G.'s father, L.G., had engaged in domestic violence. Both children were detained and placed with Mr. and Mrs. G.

Isabella adjusted well in her placement. Mr. and Mrs. G. ensured Isabella had daily visits with her mother and maternal grandmother, as well as occasional visits with her paternal relatives. Isabella's placement with the G.'s allowed her to remain in the same home as her brother, with whom she was closely bonded.

At the jurisdiction hearing on February 25, 2013, both mother and L.G. waived trial and entered no contest pleas to the allegations of the petition as amended. The court continued the matter to March 1, 2013, for a contested disposition hearing.

In advance of that hearing, father filed a motion to grant him a home-of-parent–father order and to allow him to make an appropriate plan for Isabella Father also requested the court terminate jurisdiction over Isabella and issue an order giving him sole

legal and physical custody of Isabella. Isabella's counsel filed an opposition to the request, arguing that, pursuant to Welfare and Institutions Code section 361.2, subdivision (a),[1] the court has discretion not to place a dependent child with a non-offending, non-custodial father if such a placement is detrimental to the safety, protection, and well-being of the child. Counsel explained that Isabella was in a familiar placement with people she recognized as her family, and noted that prior to the inception of dependency proceedings, Isabella had had very limited contact with father's family. He argued that removing the minor from such a stable placement with her sibling would be detrimental to her emotional well-being.

At the March 1, 2013 dispositional hearing, the juvenile court heard testimony from father, mother, maternal grandmother, paternal aunt, and father's aunt, Mrs. M. Father intended to have Mrs. M. care for Isabella.

Mother testified she took Isabella to see father fewer than five times while he was in the county jail, between September 2010 and January 2011, and two times since he was transported to state prison in January 2011.

Mother testified Isabella and her brother were "absolutely" bonded, had never been apart since her birth, and were supportive of each other. Isabella reacted positively to N.G.'s presence, and would try to follow him when he would leave. N.G.'s name was one of Isabella's first words.

The maternal grandmother testified Isabella lived with her for approximately one year, and continued to see the minor on a daily basis even after she went to live with Mr. and Mrs. G. Maternal grandmother described the children's routine as follows. The children were dropped off at her house each morning. N.G. helped her serve Isabella breakfast. She and Isabella then walked N.G. to school. Isabella sometimes cried because she wanted to stay with N.G. at school. Maternal grandmother and Isabella picked N.G. up from school in the afternoon whereupon the children spent time together feeding N.G.'s fish or watching DVDs.

---

[1] All further statutory references are to the Welfare and Institutions Code.

Mrs. M. testified she was ready to care for Isabella in her home and there was a bedroom ready for her. She had plans to add Isabella to her medical insurance, enroll her in preschool and daycare, and seek guardianship of the child.

The court then heard argument from the parties. DCFS contended placing Isabella with father so he could make an appropriate plan by then placing the child with Mr. and Mrs. M. was detrimental to Isabella because it required tearing her away from the only family members she had ever known, and removing her from a placement in which she was thriving. Counsel also pointed out that Isabella had no relationship with father, who was not expected to be released from prison until 2023. Isabella's counsel joined these arguments, and objected to father's request that the juvenile court terminate jurisdiction over Isabella upon her return to father's custody.

Father's counsel argued no evidence had been presented to prove Isabella would suffer emotional harm if she were removed from Mr. and Mrs. G.'s home and lived apart from her brother. Mr. and Mrs. M.'s counsel also argued there had been no showing of detriment, which was required under section 361.2.

The court issued its decision on the disposition of this case on March 14, 2013. After declaring Isabella to be a dependent of the court, the court found that a home-of-parent – father order would be detrimental to the child. In its written decision, the court noted that Mrs. M.'s plan of guardianship was completely inconsistent with any home-of-parent order, "as it by its very nature contemplates a court removing the child from legal custody of the parents." The court continued, "Father's plan would be to remove [Isabella] from the only home she has ever known, separate her from her sibling so that she can reside with father's relatives with whom she has had only limited contact at best." The court further noted that father's plan would deprive Isabella of the ability to reunify with her mother.

The court continued Isabella's placement with Mr. and Mrs. G., ordered reunification services and monitored visits for mother and, pursuant to section 361.5, subdivision (e), denied reunification services to father based on the length of his incarceration.

4

At the conclusion of the hearing, father's counsel requested father "be allowed to have visitation, as well as his family be allowed to have visitation." The court responded, "Well, what I was going to propose is that there be at least once-per-month visits with the paternal relatives. And I believe that they can transport the child, if they so desire, up to see the father."

Father timely filed a notice of appeal.

## II.  DISCUSSION

### 1.  Denial of Request for Home-of-Parent Order

Father maintains the juvenile court's denial of his request for a home-of-parent order was not supported by substantial evidence of detriment to Isabella. "We consider the entire record to determine whether substantial evidence supports the juvenile court's findings." (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 146.)

Section 361.2, subdivision (a) states in pertinent part: "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."

Thus, if a noncustodial, incarcerated parent seeks custody of a child removed from his or her home, the court must determine whether placement with that parent would be detrimental to the child's safety, protection, or physical or emotional well-being. Among the factors to be considered in making that determination are the incarcerated parent's ability to make appropriate arrangements for the care of the child and the length of the parent's incarceration. (*In re V.F.* (2007) 157 Cal.App.4th 962, 966.)

5

Here, Isabella was just two years old when dependency proceedings commenced. At that time, Isabella, her brother N.G. and mother were all living with Mr. and Mrs. G. In fact, the G.'s son (and N.G.'s father), L.G., moved out of the home after a domestic dispute with mother so that mother and the children could continue to reside in the home. The juvenile court detained Isabella and placed her with her brother in the G.'s care. Mother visited daily, as did Isabella's maternal grandmother. Isabella was strongly bonded with both her brother and her mother. Thus, Isabella was placed in a loving home, living with her brother, and saw her mother and maternal grandmother every day.

Father had never lived with Isabella, and had visited with her but a handful of times. He was serving a 16-year sentence for gang-related assault with a deadly weapon and was not expected to be released before 2023. His proposed plan was to remove Isabella from her extended family and place her in the Orange County home of the M.'s.

Substantial evidence supports the juvenile court's finding that this proposed plan would be detrimental to Isabella. Not only would she be taken from the familiar home of the G.s and lose daily contact with her mother, but she would be separated from her brother, with whom she was strongly bonded and had lived her entire life. Her established daily routine with the maternal grandmother would come to an end.

Moreover, the plan put at substantial risk mother's reunification efforts.[2] Mother was participating in parenting classes, substance abuse counseling, and a 17-week anger management course, as well as a dual diagnosis program at Harbor UCLA. Both Isabella and N.G. had a bond with mother, who was motivated to regain custody of them. Father's plan jeopardized mother's reunification efforts and exposed Isabella to an environment detrimental to her well-being.

Furthermore, we reject father's contention that the juvenile court "erred by reasoning that a preponderance of the evidence standard applied to section 361.2."

---

[2] Indeed, as noted by the juvenile court, if a child is placed with the non-custodial parent, the other parent is not entitled to reunification services. (Welf. & Inst. Code § 361.2, subd.(a).) Said the court: "This is especially true if the court were to grant father's request to terminate jurisdiction with a family law order."

Though the court initially determined the preponderance of the evidence standard applied, it explicitly stated, "[T]he court makes all these findings not only by a preponderance, but by clear and convincing evidence." Thus, the court's mistaken belief that the preponderance of the evidence standard applied to its finding of detriment under section 361.2 was harmless, since the court also weighed the evidence using the correct legal standard. (*In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1827.)

The juvenile court's denial of father's request for a home-of-parent order was supported by substantial evidence that placement with father would be detrimental to Isabella under section 361.2, subdivision (a).

## 2. Visitation Order

Although father acknowledges that he was properly denied reunification services due to the length of his incarceration, he relies on *In re Dylan T.* (1998) 65 Cal.App.4th 765 to argue that he was entitled to court-ordered visits with Isabella (*Id.*, at p. 770 ["in dependency proceedings, absent certain circumstances, visitation must be provided to the incarcerated parent"].) He further argues that the court's comments to the effect that his relatives may use their visits to transport Isabella to prison to visit him amounted to an improper delegation of authority over his visitation rights, a practice disapproved of in *In re Rebecca S.* (2010) 181 Cal.App.4th 1310 and other cases.

DCFS agrees a juvenile court may not delegate its authority regarding the frequency and duration of a parent's visit, but contends that father forfeited the issue by failing to object in the juvenile court.

A review of the record reveals that the juvenile court made no visitation order with respect to father. The court's written decision, attached to and incorporated into the minute order, makes no mention of any visitation by father. In response to father's counsel's request that father be allowed to have visitation, the court's only comments were, "Well, what I was going to propose is that there be at least once-per-month visits with the paternal relatives. And I believe that they can transport the child, if they so

7

desire, up to see the father." When counsel interjected that the paternal relatives had been having weekly visits, the court responded, "I understand that, but that's my order today."

A plain reading of the transcript makes clear that the court did not order visitation for father; indeed, father acknowledges this in his reply brief: "There was no order for father to actually receive any visitation and it was delegated to the relatives to allow father to visit if they desired to." Instead, the court ordered visitation for the paternal relatives only, who would be permitted to transport the child to the prison to see father. The court did not delegate authority over father's visitation rights to the relatives, since the court granted him no visitation rights. The court simply made clear that the relatives would not be in violation of a court order if they transported Isabella to the prison to visit with father.

Moreover, the juvenile court's failure to order visitation for father was consonant with the law. When a parent is denied reunification services due to his or her incarceration, the court is required to determine whether to set a hearing under section 366.26 in order to determine whether adoption, guardianship, or long-term foster care is the most appropriate plan. If so, the court is to conduct that hearing within 120 days after the disposition hearing. "However, the court shall not schedule a hearing so long as the other parent is being provided reunification services pursuant to subdivision (a). The court *may* continue to permit the parent to visit the child unless it finds that visitation would be detrimental to the child." (§ 361.5, subd. (f), italics added.) Thus, where the parent is not receiving reunification services, a visitation order is not required, even if visits would not be detrimental to the child. This provision makes good sense, particularly as it applies to the circumstances of this case: Since visitation is the primary reunification service available to the incarcerated parent of a two-year-old child, it would be nonsensical for the law to authorize the court to deny visits as a reunification service, but then immediately require the court to provide for visits through the conclusion of the permanency planning hearing.

8

### III. DISPOSITION

The orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KUMAR, J.[*]

We concur:

TURNER, P. J.

KRIEGLER, J.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.